UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS HULETT, III.,
         Plaintiff,

v.

**REPORT and RECOMMENDATION**

13-CV-725A

CAROLYN COLVIN, Acting Commissioner
of the Social Security Administration,
         Defendant.
_____

## INTRODUCTION

This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions. [6].[1] This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the defendant Acting Commissioner of the Social Security Administration that plaintiff was not entitled to Disabled Adult Child Benefits ("DAC") and Supplemental Security Income Benefits ("SSI"). Before me are the parties' cross-motions for judgment on the pleadings [13, 19].

For the reasons stated below, I recommend that this case be remanded to the Acting Commissioner for further proceedings.

---

[1] Bracketed references are to the CM/ECF docket entries.

## PROCEDURAL HISTORY

Plaintiff Thomas Hulett, III was originally found to be eligible for SSI childhood benefits based upon a learning disorder (T. 37).[2] Upon reaching the age of 18, individuals who had been receiving SSI childhood benefits have to be reviewed to determine if they are entitled to continued benefits under the adult disability regulations (T. 39). Plaintiff was born in 1987 (T. 488). On May 7, 2008, as a result of redetermination of disability, plaintiff was advised that he was not disabled under the adult SSI standards (T. 39-44). Plaintiff's request for reconsideration was denied (T. 63-66). Plaintiff then requested a hearing before an administrative law judge ("ALJ") (T. (T. 68). Although a hearing was scheduled to take place before ALJ James E. Dombeck, the appeal was dismissed because neither plaintiff nor a representative appeared for the hearing (T. 397).

Plaintiff appealed the dismissal by ALJ Dombeck and the Appeals Council remanded the case for further administrative hearing after discovering that the hearing notice had been sent to the wrong address (T. 401-02). In that same decision, the Appeals Council determined that plaintiff had filed a second claim for benefits and that the second application should be consolidated with his original application (T. 402). An administrative hearing was held before ALJ Eric L. Glazer on June 14, 2012 (T. 663). ALJ Glazer determined that plaintiff did not meet the adult disability standards (T. 34). The Appeals Council refused to alter that determination on July 10, 2013, making the ALJ's determination the final decision of the Acting Commissioner (T. 8). The plaintiff thereafter commenced this action.

---

[2]  References denoted as "T" are to the pages of the administrative transcript.

## ANALYSIS

**A.  Standard of Review**

Pursuant to 42 U.S.C. §402(d)(1), a claimant may be entitled to DAC benefits based on the record earnings of another individual who was entitled to old-age or disability insurance benefits, or who died as a fully insured individual, if the claimant: (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in 42 U.S.C. §423(d)) which began before he attained the age of 22. The regulations (20 C.F.R. §404.350) state that: "you are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if—(1) you are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359; (2) you are dependent on the insured, as defined in §§ 404.360 through 404.365; (3) you apply; (4) you are unmarried; and (5) you are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in §404.367".

There does not appear to be any dispute that plaintiff would meet the eligibility requirements for DAC benefits if he were determined to be disabled. Plaintiff argues that the Acting Commissioner erred in finding that he was not disabled. The only issue to be determined by this court is whether the Acting Commissioner's decision that plaintiff was not entitled to benefits is supported by substantial evidence.  See 42 U.S.C. §405(g); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991).  The Social Security Act states that, upon review of the Acting Commissioner's decision by the district court, "[t]he findings of the Acting Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive". 42 U.S.C. §405(g).

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

For purposes of entitlement to disability insurance benefits, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". 42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the Acting Commissioner must employ a five-step inquiry:

> 1. The Acting Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Acting Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a 'severe impairment,' the Acting Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Acting Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not 'listed' in the regulations, the Acting Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

      5. If the claimant is unable to perform his or her past work, the Acting Commissioner then determines whether there is other work which the claimant could perform.

      The Acting Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. Talavera v. Astrue, 697 F.3d 145, 151 (2nd Cir. 2012)(citing DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2nd Cir.1998)); *see also* 20 C.F.R. §§404.1520, 416.920. Moreover, the ALJ has an affirmative duty to fully develop the record where deficiencies exist. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting Commissioner of Social Security, 588 Fed.Appx. 82, 84 (2nd Cir. 2015).

      If a claimant has a mental impairment, the ALJ must employ the "special technique" identified in 20 C.F.R. §404.1520a to evaluate the claimant's symptoms and rate the degree of functional limitation resulting from the impairment. 20 C.F.R. §404.1520a(b). In doing so, the ALJ must consider all relevant and available clinical signs and laboratory findings, the effects of the symptoms, and how a claimant's functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment. 20 C.F.R. §404.1520a(c). The ALJ must rate a claimant's degree of limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §404.1520a(c)(3).[3] With respect to assessing limitations in the first three functional areas, a five point scale is used: none, mild, moderate, marked, and extreme. In the fourth functional area, a four point scale is used: none, one or two, three, four or more. 20 C.F.R. §404.1520a(c)(4).

      To satisfy the "Paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in

---

[3] These functional areas are also listed in §12.04B of the Appendix 1 listings and are referred to as the "Paragraph B criteria."

maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A "marked" limitation means "more than moderate, but less than extreme"; one that "interferes seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis". 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). "Repeated" episodes, *e.g.,* of decompensation, means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks" or "more frequent episodes of shorter duration or less frequent episodes of longer duration" which are determined, in an exercise of judgment, to be "of equal severity". Id*.,* §12.00(C)(4). See also Roach v. Colvin, 2013 WL 5464748, at *8 (N.D.N.Y. 2013).

      Where the ALJ determines that the claimant has a severe mental impairment, the ALJ must determine whether that impairment meets or equals a mental disorder listed in Appendix 1. 20 C.F.R. §404.1520a(d)(2). Mental impairments are addressed at §12.01 *et seq*. of the Appendix 1 listings. If the mental impairment is severe but does not meet or equal the Appendix 1 listing, the ALJ must consider any limitations resulting from the impairment when making a residual functional capacity assessment. 20 C.F.R. §404.1520a(d)(3). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work". *See* Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994); Lohbeck v. Astrue, 258 Fed. App'x 988 (9th Cir. 2007).

**B. Failure To Assess Under §12.05 Of The Appendix 1 Listings**

The plaintiff argues that ALJ Glazer erred by failing to assess plaintiff's impairments under §12.05 of the listings. (Plaintiff's Memorandum of Law [13-1], p. 4). In his July 2, 2010 decision, ALJ Glazer determined that plaintiff suffered from the following severe impairments: major depressive disorder and borderline intellectual functioning (T. 24). ALJ Glazer determined that plaintiff did not meet the Appendix 1 listings under §12.02 (Organic Mental Disorders) and §12.04 (Affective Disorders). Id.

In making this determination at stage 3 of the sequential process, ALJ Glazer referred to the Paragraph B criteria and found that plaintiff had a mild restriction in the first (activities of daily living) and third (concentration, pace and persistence) functional areas; a moderate restriction in social functioning and no episodes of decompensation (T. 24-25). He then found that plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels but with the following limitations: he has sufficient attention and concentration to understand, remember, and follow simple instructions and he can occasionally interact with co-workers and the general public" (T. 26).

ALJ Glazer did not assess plaintiff's impairments under §12.05 of the listings. That section applies to individuals with an intellectual disability, as defined as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22". 20 C.F.R. Part 404, Subpt. P, App. 1 §12.05. The required level of severity for this disorder is met when the requirements in either A, B, C, or D are satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

      B. A valid verbal, performance, or full scale IQ of 59 or less; OR

      C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR

      D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
         1. Marked restriction of activities of daily living; or
         2. Marked difficulties in maintaining social functioning; or
         3. Marked difficulties in maintaining concentration, persistence, or pace; or
         4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, §12.05.

Here, plaintiff asserts that he meets §12.05(C) (Plaintiff's Memorandum of Law [13-1], p. 4]) and that he may meet §12.05(D). Id., p. 5. The record reflects that plaintiff underwent numerous IQ evaluations using the Weschler Intelligence Scale ("WISC– III"). In 1994, plaintiff was assessed a full scale IQ of 63 (T. 215). In 1998, plaintiff was assessed a full scale IQ of 68 (T. 215). In 2003 and in 2009, plaintiff was assessed a full scale IQ of 71 (T. 562, 290). Plaintiff points to §12.00(D)(6)(c) which states "in cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQ's are provided in the Weschler series, we use the lowest of these in conjunction with 12.05." (Plaintiff's Memorandum of Law [13-1], p. 4).

Plaintiff argues that ALJ Glazer should have considered plaintiff's impairments under the intellectual disability provisions of §12.05, and that if he had done so, he would have had to use plaintiff's lowest IQ scores, which were between 60 and 70. Plaintiff further argues that since ALJ Glazer found that he suffered from major depressive disorder, this finding would satisfy the requirement that in addition to a low IQ score, plaintiff suffered from a physical or other mental

impairment imposing an additional and significant work-related imitation of function. Id., p. 4. Thus, plaintiff claims that he meets the listings under §12.05(C). Plaintiff also argues that the evidence from his social worker reflected that he had marked restrictions in the activities of daily living, social functioning and concentration, persistence or pace. Id., p. 5. According to plaintiff, such a finding, along with plaintiff's lowest IQ scores, would suggest that plaintiff also satisfies the listings under §12.05 (D). Id.

The Acting Commissioner argues that because ALJ Glazer made a blanket statement that plaintiff did not have an impairment that "meets or medically equals the severity of one of the listed impairments" (T. 24), such a statement would encompass §12.05 of the listings. (Acting Commissioner's Memorandum of Law [19-1, p. 23]. Such a generalized boilerplate statement is insufficient to suggest that ALJ Glazer considered the criteria of §12.05, particularly inasmuch as ALJ Glazer specifically identified the various listings (§§12.02 and 12.04) which he had considered in assessing plaintiff's impairments (T. 24).

The Acting Commissioner then argues the merits of whether plaintiff met the IQ requirements of §12.05, since as plaintiff's 2009 full scale IQ was 71. (Acting Commissioner's Memorandum of Law [19-1], pp. 23-24). However, the Acting Commissioner does not otherwise address the validity of the prior IQ scores or discuss §12.00(D)(6)(c), which provides that where multiple scores exist, the lowest IQ score is to be considered for purposes of §12.05. *See generally* Barns v. Colvin, 2015 WL 3514041 (D. Oregon 2015) (courts have adhered to this rule even when the claimant's most recent IQ score is the higher score and does not qualify under §12.05); Muncy v. Apfel, 247 F.3d 728 (8th Cir. 2001) (the Commissioner must use the lowest IQ score in conjunction with §12.05). Instead, the Acting Commissioner argues that in addition to a low IQ score, the plaintiff must also show that he had deficits in adaptive functioning, and

that plaintiff cannot do so in this case. (Acting Commissioner's Memorandum of Law [19-1], pp. 24-25). Plaintiff asserts that his major depressive disorder and other functional limitations satisfy this requirement. (Plaintiff's Memorandum of Law [13-1], pp. 4-5).

I need not parse the parties' respective arguments as to whether or not plaintiff can establish all of the criteria of §§12.05(C) or 12.05(D). Because ALJ Glazer failed to analyze plaintiff's claim for benefits under §12.05 of the listings, a remand of this case for further administrative proceedings is appropriate. *See* Vasquez v. Barnhart, 2004 WL 725322, at *9 (E.D.N.Y. Mar. 2, 2004)(Although defendant points to specific record evidence in her memorandum of law that she argues supports the ALJ's determination at step three, the ALJ's failure to make findings on the record in the first instance requires remand.). Neither the court nor the Acting Commissioner should engage in *post hoc* efforts to determine what the ALJ would have done had the ALJ considered the issue. *See* McKinstry v. Astrue, 2012 WL 619112, at *4 (D. Vt. 2012) aff'd, 511 F. App'x 110 (2d Cir. 2013)(A court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action."). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir.1983).

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [13] be granted to the extent that this case be remanded to the Acting Commissioner for further

proceedings consistent with this Report and Recommendation, and that the Acting Commissioner's motion for judgment on the pleadings [19] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 9, 2015 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 22, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge