UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

THOMAS HULETT, III,

                          Plaintiff,

          -vs-                              **No. 1:13-CV-00725 (MAT)**
                                            **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.

─────────────────────────────────

## I.   Introduction

        Represented by counsel, Thomas Hulett, III ("plaintiff")
brings this action pursuant to Titles II and XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
the Commissioner of Social Security ("the Commissioner") denying
his applications for disabled adult child ("DAC") benefits and
supplemental security income ("SSI"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). The matter was
initially before the Court on the parties' cross motions for
summary judgment.[1] The parties' motions were referred to Magistrate
Judge Jeremiah J. McCarthy for consideration of the factual and
legal issues presented, and to prepare and file a Report and
Recommendation ("R&R") containing a recommended disposition of the
issues raised.

───────────────

        [1] This case was originally assigned to Judge Richard Arcara, who referred
it to Magistrate Judge McCarthy for a Report and Recommendation, which was
completed and filed on October 22, 2015. The case thereafter was referred to this
Court by order dated February 4, 2016.

By R&R dated October 22, 2015, Magistrate Judge McCarthy found that the ALJ erred, at step three of the sequential evaluation, in not considering Listing 12.05, see 20 C.F.R., Pt. 404, Subpart P, App'x 1, § 12.05(C), (D), which at the time of the ALJ's decision defined mental retardation.[2] Therefore, the R&R recommended that the case be remanded for further administrative proceedings. Doc. 20.

## II.  Procedural History

The record reveals that plaintiff (d/o/b August 1, 1987) received SSI benefits, as a disabled child, through his eighteenth birthday. On May 7, 2008, plaintiff was notified that he was found to be no longer disabled as of May 2008, as a result of a redetermination of disability under the adult SSI standards. Plaintiff requested reconsideration, which was denied in June 2009. Plaintiff then requested a hearing; however, he did not appear for his hearing because notice had not been sent to his proper address. Administrative Law Judge ("ALJ") James E. Dombeck dismissed the case based upon plaintiff's failure to appear. In December 2011, the Appeals Council found that plaintiff had good reason for not appearing for the original hearing and remanded the case. The Appeals Council also noted that plaintiff had filed a subsequent December 2010 application for SSI, and directed the ALJ on remand

---

[2] That listing was amended in August 2013 to change the phrase "mental retardation" to "intellectual disability." This amendment did not change the substantive requirements of the listing.

to consider whether that application should be consolidated with his already pending claims for DAC benefits and reconsideration of SSI benefits.

After a hearing on remand, ALJ Eric L. Glazer ("the ALJ") issued an unfavorable decision on July 2, 2012. In his decision, the ALJ consolidated plaintiff's December 2010 application with plaintiff's claims on remand, and therefore his decision was dispositive of all of plaintiff's claims. The Appeals Council denied review, and this timely action followed.

## III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff had not attained age 22 as of February 1, 1993, the alleged onset date. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since that date. The ALJ also found that plaintiff attained age 18 on August 1, 2005 and was eligible for SSI benefits as a child for the month preceding the month in which he attained age 18. Plaintiff was notified that he was found no longer disabled as of May 7, 2008, based on a redetermination of disability under the rules for adults who file new applications.

At step two, the ALJ found that, prior to attaining age 22 and since May 7, 2008, plaintiff suffered from the following severe

3

impairments: major depressive disorder and borderline intellectual functioning. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment at any relevant time period. Regarding mental health impairments, the ALJ determined that plaintiff had mild restrictions in ADLs, moderate difficulties in social functioning, and mild difficulties in concentration, persistence, or pace. The ALJ found that plaintiff had experienced no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he had sufficient attention and concentration to understand, remember, and follow simple instructions and he could occasionally interact with coworkers and the general public. After finding that plaintiff had no past relevant work, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## IV.  Report and Recommendation

As noted above, the R&R recommended remand on the basis that the ALJ failed to consider Listing 12.05. The Commissioner filed objections to the R&R on November 9, 2015. Doc. 21. The

Commissioner's objections present one point, which argues that the R&R incorrectly concluded that the ALJ erred in failing to assess plaintiff's impairments under Listing 12.05.

Plaintiff filed a rebuttal to the Commissioner's objections. Plaintiff argued that his IQ test scores may have improved over time "simply due to his familiarity with the test after numerous examinations." Doc. 23, at 1. Plaintiff's rebuttal also objected to the R&R's failure to address his argument, which was raised in his original motion for judgment on the pleadings, that the ALJ erred in failing to give any weight to the report provided by plaintiff's social worker, Maryellen Montanaro. According to plaintiff, "[e]ven accepting the Commissioner's premise regarding the IQ scores," the case should be remanded for reconsideration of Ms. Montanaro's opinion.

**V.   Discussion**

When reviewing a magistrate judge's report and recommendation, a district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b), and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]" id.

**A.   Listing 12.05**

A claimant's medically determinable impairment can meet Listing 12.05 by satisfying the requirements of one of four

alternate prongs, three of which require *valid* IQ scores in certain ranges. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B) (requiring "valid verbal, performance, or full scale IQ of 59 or less"), (C), (D) (requiring "valid verbal, performance, or full scale IQ of 60 through 70," in addition to other requirements). As the Commissioner points out, the regulations provide that an IQ score obtained between the ages of 7 and 16 "should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(D)(10).

Multiple sets of IQ scores appear in this record. In a report of a 1998 intelligence test, school psychologist Theresa Horning reported the results of tests administered in November 1990, January 1992, and December 1994. In 1994, at age 7, plaintiff was assessed as having a full scale IQ of 63. In 1998, at age 10, plaintiff was assessed with a full scale IQ of 68. In 2003, at age 15, plaintiff was assessed with a full scale IQ of 71. Again in 2009, at age 21, plaintiff was assessed with a full scale IQ of 71.

The scores assessed when plaintiff was ages 7, 10, and 15 were no longer valid at the time of the ALJ's decision, nor were they valid during any time relevant to plaintiff's applications. See Gagnon v. Comm'r of Soc. Sec., 2016 WL 482068, *2-3 (N.D.N.Y. Feb. 5, 2016) ("Because [plaintiff] was only fourteen and a half years old at the time of the 2007 IQ test, and two years had passed

by the time she applied for benefits, the 2007 results cannot be considered valid."); Marizan ex rel. A.O. v. Colvin, 2014 WL 3905911, *10 (S.D.N.Y. Aug. 11, 2014) ("Pursuant to the SSA's regulations, IQ scores obtained before age seven are current for one year if the tested IQ is 40 or above. Thus, A.O.'s May 2009 scores were current and valid until May 19, 2010.") (internal citation omitted); Colon-Torres v. Colvin, 2014 WL 296845, *2 (N.D.N.Y. Jan. 27, 2014) (noting that test scores were "stale because 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00(D)(10) limits the validity of IQ test results obtained between ages seven and sixteen to two years when the score is 40 or above"); Burden ex rel. AA v. Comm'r of Soc. Sec., 2008 WL 2778848, *6 (N.D.N.Y. July 14, 2008) ("As of the date of the ALJ's decision, the first IQ scores were invalid because more than one year had elapsed since the time of testing."). Because those scores were invalid, they did not provide a basis for a finding that plaintiff satisfied the requirements of listing 12.05. See Townsend v. Comm'r of Soc. Sec., 2014 WL 809516, *12 (N.D. Ohio Feb. 28, 2014) ("Townsend also argues that his 1995 verbal IQ score of 69 satisfies listing 12.05(C). However, Townsend's argument is unpersuasive. Townsend was 10 years old at that time the test score was obtained. Thus, that test score is insufficient to establish that he meets Listing 12.05(C).") (internal citation omitted).

The 2005 test results indicated a full scale IQ of 71, which is higher than that required by any of the prongs of listing 12.05. Thus, the valid IQ scores in this record did not implicate listing 12.05, and as a result, the ALJ's failure to explicitly consider this listing was not error. See, e.g., Brummett ex rel. L.R. v. Astrue, 2012 WL 432099, *3 (N.D.N.Y. Feb. 10, 2012) (holding that because a finding that the plaintiff met a particular listing was precluded by the evidence, "the ALJ did not err in failing to explicitly analyze [the plaintiff]'s qualification under that Listing."); Temkin v. Astrue, 2011 WL 17523, *9 (E.D.N.Y. Jan. 4, 2011) (holding that ALJ did not err in failing to explicitly consider particular listing, where "there was no medical or other evidence to demonstrate that the requirements of [that listing] were met"). For these reasons, the Court sustains the Commissioner's objections and declines to adopt the R&R.

## B.   Consideration of Ms. Montanaro's Report

The R&R did not reach plaintiff's remaining arguments, having recommended remand on a separate basis. However, plaintiff objects to the R&R's failure to address his argument, raised in his original motion for judgment on the pleadings, that the ALJ erred in failing to consider Ms. Montanaro's opinion. Ms. Montanaro, plaintiff's caseworker at Niagara County Department of Social Services ("NCDSS") in the Protective Services for Adults Unit, stated that she had been working with plaintiff for a little over

a year. Ms. Montanaro provided a detailed letter, dated June 2012, describing plaintiff's various limitations.  Plaintiff presented to NCDSS "as homeless in March 2011," after "wander[ing] into a church for shelter." T. 652. Ms. Montanaro described how plaintiff missed his first appointment for services after becoming lost on the way to her office from his BOCES program. According to Ms. Montanaro, "[t]he BOCES program and [her] office are one block away from each other and [plaintiff] was given very specific directions . . . but yet still became lost." Id.

Ms. Montanaro described the services provided to plaintiff, which included reminding him of appointments. According to Ms. Montanaro, plaintiff "forgets almost every appointment" and at times he even forgot her name. Because of this tendency, he had almost lost his aid. Ms. Montanaro opined that if plaintiff was granted benefits under the Act, "NCDSS would petition to be his representative payee"; she stated that she was "sure [plaintiff] would end up homeless if he was allowed to handle his own money. He does not grasp how to manage finances." T. 653. She also reported that plaintiff needed help with daily living skills, and needed to be reminded to clean his apartment, wash his laundry, and properly store his food. According to Ms. Montanaro, plaintiff "[told] stories that [were] bizarre and very unrealistic," and believed those stories to be true. These stories included one in which plaintiff claimed to have had a one year old son who was shot and

killed while sitting on plaintiff's shoulders; "[plaintiff] has never been able to produce any evidence that the child existed or that a shooting ever happened." Id.

Ms. Montanaro concluded the letter by stating that plaintiff was a "very kind, sensitive, gentle and caring individual," who only "cause[d] troubles . . . when his social awkwardness causes misunderstandings." Id. While acknowledging that she was not a medical source, Ms. Montanaro opined that plaintiff had "many disabilities," "[w]hether it [was] autism, which his school records state[d], or a combination of autism, personality disorder, traumatic brain injury (from the abuse [plaintiff] claim[ed] he endured . . .)." T. 654. Regarding that abuse, Ms. Montanaro stated that plaintiff had several child protective reports on file, but she could not see the contents because they originated in another county. According to Ms. Montanaro, "it [was] evident . . . that [plaintiff] has issues that cause[d] [him] not to be able to function in society without the aid of a service professional." Id.

The ALJ gave "minimal weight" to Ms. Montanaro's opinion, stating no reasoning other than "the regulations do not classify case workers as either physicians or 'other acceptable medical sources.'" T. 32 (citing 20 C.F.R. §§ 404.1513, 416.913). The ALJ's decision, however, ignores the fact that the regulations he cited explicitly classify "[p]ublic and private social welfare agency personnel" as "other sources," whose opinions may be used to "show

the severity of [a claimant's] impairment(s) and how it affects [the] ability to work."   20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3).

Because she was an "other source," of course, Ms. Montanaro's opinion is not entitled to controlling weight as would be the case with a treating physician. However, "although an ALJ is not 'required to accord controlling weight to a [social worker's] opinion,' he is not 'entitled to disregard [it] altogether.'" Genovese v. Astrue, 2012 WL 4960355, *15 (E.D.N.Y. Oct. 17, 2012) (quoting Harris v. Astrue, 2009 WL 8500986, *4 n.6 (E.D.N.Y. Jan. 20, 2009)). "Consequently, if an ALJ determines that the opinion of a 'social worker [is] not entitled to any weight, the ALJ . . . [must] explain that decision' or risk remand." Id. (quoting Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (remanding where ALJ disregarded social worker's opinion "simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record")).

Indeed, the Administration has specifically instructed that opinions from "other sources" are to be given serious consideration. SSR 06-3p states:

> For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty

or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity *may, under certain circumstances, properly be determined to outweigh the opinion from a medical source*, including a treating source. For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.

SSR 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies (eff. Aug. 9, 2006) (emphasis added).

Here, the ALJ's sole reasoning for rejecting Ms. Montanaro's opinion was because she was not a medical source under the regulations. This constituted reversible error, which was especially significant here, where Ms. Montanaro was the only opinion source from the relevant time frame to have a longitudinal relationship with plaintiff. The Court notes that, in accordance with SSR 06-3p, "in some circumstances, an opinion of an 'other source' with a particularly lengthy treating relationship with the claimant may be entitled to greater weight than an 'acceptable medical source' such as a treating physician who has had infrequent contact with the claimant." Genovese, 2012 WL 4960355, at *15

(citing <u>Saxon v. Astrue</u>, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011) ("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a nonacceptable medical source than a treating physician.")). This case, considering plaintiff's background as a former recipient of benefits and Ms. Montanaro's particular familiarity with plaintiff's daily functioning, may present such circumstances. On remand, the ALJ is directed to specifically address Ms. Montanaro's opinion, and state the weight given to the opinion, keeping in mind the above principles. If the ALJ decides to give the opinion little or no weight, he must state his reasons based on the substantial evidence of record.

## VII. Conclusion

For the foregoing reasons, the Court sustains the Commissioner's objections and declines to adopt the R&R. However, for the further reasons discussed in this Decision and Order, the Commissioner's motion for judgment on the pleadings (Doc. 19) is denied and plaintiff's motion (Doc. 13) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     February 12, 2016
           Rochester, New York.